Linda GRIFFIN and Jimmy Griffin, Plaintiffs-
Respondents,

v.

MILWAUKEE TRANSPORT SERVICES, INC., Defendant-
Appellant.

Court of Appeals

. *No. 00–0861. Submitted on briefs February 8, 2001.—Decided
May 15, 2001.*

## 2001 WI App 125

(Also reported in 630 N.W.2d 536.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas A. Cabush* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *David A. Saichek* of *Saichek Law Offices, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. CURLEY, J. Milwaukee Transport Services, Inc. (the bus company) appeals the denial of its summary judgment motion seeking dismissal of Linda Griffin's lawsuit for her failure to commence suit within the six-month period required by WIS. STAT. § 893.80(1g).[1] The bus company argues that the trial court erred in finding unconstitutional the statute's shortened six-month period for a claimant to sue a governmental body, after filing a notice of claim and injury and receiving a notice of disallowance. Griffin maintains that the statute is unconstitutional; however, she alternatively argues that the notice of disallowance sent to her was deficient. After applying the rational basis test to § 893.80(1g), we conclude that the statute

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

is constitutional. We are also satisfied that the bus company gave proper notification. Thus, we reverse.

## I. BACKGROUND.

¶ 2. Linda Griffin sued the bus company, claiming that she was injured on September 14, 1998, while a passenger on a county bus when it collided with another bus. Inasmuch as the bus company is an agent of Milwaukee County, Griffin was required to file a notice of injury and claim for damages pursuant to WIS. STAT. § 895.80(1)(a). Her attorney filed the notice with the Milwaukee County Clerk on October 8, 1998. The notice outlined the particulars of the accident and her injuries. The letter also stated, "This includes the claim of her husband, Jimmy Griffin." Later in the letter, Griffin outlined her damages: "That the damages for which claim is hereby made are as follows: $50,000.00 or less. Linda Griffin, for her neck and shoulder injuries, medical expenses, pain, suffering and any permanent residuals: and Jimmy Griffin for loss of society and companionship." The County Board disallowed Griffin's claim and, pursuant to WIS. STAT. § 893.80(1g), the Milwaukee County Clerk sent her a certified letter dated November 5, 1998, formally denying her claim. Griffin received the letter on November 6, 1998.

¶ 3. After receiving the letter disallowing her claim, Griffin did not file suit against the bus company until September 9, 1999. Shortly thereafter, the bus company filed an answer and a summary judgment motion seeking dismissal of the case. The bus company argued that Griffin failed to file her complaint within the six-month period specified in WIS. STAT. § 893.80(1g), as the six months expired on May 6, 1999. The trial court denied the bus company's summary

judgment motion. The trial court concluded that the statutory scheme restricting Griffin's opportunity to bring suit to six months because she had been served with a notice of disallowance was unconstitutional. The trial court reasoned that because claimants who have not received a formal notice of disallowance of their claim are allowed three years to file suit, § 893.80(1g)'s six-month limitation violated the equal protection clause of the United States and Wisconsin Constitutions. The trial court found that no rational basis existed for the different time limitations. The trial court also expressed its concern that the notice was deficient.

## II. ANALYSIS.

¶ 4. In an appeal from the denial of summary judgment, this court reviews the record *de novo*, applying the same standard and following the same methodology required of the trial court under WIS. STAT. § 802.08. *Delta Group, Inc. v. DBI, Inc.*, 204 Wis. 2d 515, 520, 555 N.W.2d 162 (Ct App. 1996). Further, we review statutory constitutional challenges *de novo*. *Bethke v. Lauderdale of La Crosse, Inc.*, 2000 WI App. 107, ¶ 15, 235 Wis. 2d 103, 612 N.W.2d 332. Thus, this court gives no deference to the trial court's determination in this matter.

¶ 5. The bus company submits that the trial court erred in finding WIS. STAT. § 893.80(1g) unconstitutional. Specifically, the bus company argues that the trial court: (1) failed to apply the presumption of constitutionality; and (2) failed to require Griffin to prove the statute unconstitutional beyond a reasonable doubt. The bus company also argues that, while the trial court discussed whether a rational basis existed for the legis-

lature's decision to impose different time limitations for bringing suits against governmental bodies depending on whether the claimants received a formal notice of disallowance, it erred in finding that no rational basis existed for the legislature's action.

¶ 6. Griffin responds, relying principally on *Blackbourn v. School District of Onalaska*, 174 Wis. 2d 496, 497 N.W.2d 460 (Ct. App. 1993), that the statute is unconstitutional because it is unfair and unreasonable and fails the rational basis test. On appeal, Griffin also argues that the county's notice of disallowance did not trigger the six-month time period because the notice of disallowance was deficient. She submits that because the statute required the county to notify her that she had six months from the date of *service* of the notice to bring an action, and the county's notice advised Griffin that she had six months from the date of the *notice*, she has not been properly notified. Finally, Griffin argues that since the notice of disallowance was sent to her, and not to her attorney who filed the notice of claim and injury on her behalf, or to her husband, who was claiming a loss of consortium, the notice of disallowance's shorter time frame should not be enforced. We are not persuaded by any of her arguments.

A. *Rational Basis Test*

¶ 7. As noted, the trial court found WIS. STAT. § 893.80(1g) to be violative of the equal protection clause found in the United States and Wisconsin Constitutions.[2]

---

[2] The Equal Protection Clause is found in the Fourteenth Amendment to the United States Constitution, and, in pertinent part, provides: ". . .nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws."

¶ 8. A party seeking to have a statute found unconstitutional has a heavy burden. A statute enjoys a presumption that it is constitutional and a party challenging a statute must also prove that the statute is unconstitutional beyond a reasonable doubt. *Sambs v. City of Brookfield*, 97 Wis. 2d 356, 370, 293 N.W.2d 504 (1980). These rules apply to constitutional challenges based upon the equal protection clause as well.

> We begin with the principle repeatedly stated by this court and the United States Supreme Court that all legislative acts are presumed constitutional, that a heavy burden is placed on the party challenging constitutionality, and that if any doubt exists it must be resolved in favor of the constitutionality of a statute. When the challenger asserts that a statutory classification is violative of the equal protection clause, he must prove abuse of legislative discretion beyond a reasonable doubt.

*Stanhope v. Brown County*, 90 Wis. 2d 823, 837, 280 N.W.2d 711 (1979).

¶ 9. The trial court made no mention of the presumption of constitutionality, nor did the trial court find that Griffin had proved the statute unconstitutional beyond a reasonable doubt. Thus, the record does not reflect that the trial court considered either the existence of the presumption or the high burden of proof. Rather, in finding the statute unconstitutional, the trial court erroneously determined that "the courts

---

The Wisconsin Constitution, art. I, § 1, provides:

All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.

have made it exceedingly clear that the statute must be strictly construed against the governmental unit." The trial court then stated, "If that is the case, then this particular plaintiff needs to show no prejudice in receiving a notice that does not say that she has six months from it–this notice of disallowance." The trial court then adopted Griffin's argument, finding no rational basis for WIS. STAT. § 893.80(1g) based, principally, on the holding in *Blackbourn*. Our analysis of the proper legal doctrines and relevant case law leads us to a different conclusion.

¶ 10. WISCONSIN STAT. § 893.80(1g) reads:

**Claims against governmental bodies or officers, agents or employes; notice of injury; limitation of damages and suits.**

. . . .

 **(1g)** Notice of disallowance of the claim submitted under sub. (1) shall be served on the claimant by registered or certified mail and the receipt therefor, signed by the claimant, or the returned registered letter, shall be proof of service. Failure of the appropriate body to disallow a claim within 120 days after presentation of the written notice of the claim is a disallowance. No action on a claim under this section against any defendant fire company, corporation, subdivision or agency nor against any defendant officer, official, agent or employe, may be brought after 6 months from the date of service of the notice of disallowance, and the notice of disallowance shall contain a statement to that effect.

The statute clearly sets out two different statutes of limitation—one for claimants who have received a notice of disallowance, and another for claimants who have not. From these separate classifications springs

Griffin's equal protection argument. She argues that the six-month limitation on bringing suit is arbitrary and irrational because she only had six months to bring suit, while those who did not receive notification of disallowance after filing a claim have three years to bring suit.

¶ 11. When a statute is challenged on equal protection grounds, this court is obligated to apply a rational basis test to the statute. "The appropriate test for review of the classification of governmental tortfeasors and their victims is whether there is a rational basis for the classification." *Sambs*, 97 Wis. 2d at 370. The "rational basis" test was defined in *McGowan v. Maryland*, 366 U.S. 420 (1961):

> [T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*Id.* at 425–26. Then in *Sambs*, our supreme court opined that " '[e]qual protection of the law is denied only where the legislature has made irrational or arbitrary classification. . . . The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification.' " *Sambs*, 97 Wis. 2d at 371 (citation omitted).

441

■

¶ 12. Thus, the question is whether any reasonable basis justifies the legislature's enactment of WIS. STAT. § 893.80(1g), which affords different limitations on the commencement of suit depending on whether a notice of disallowance was sent to the claimant. In conducting our analysis, we are directed to:

> locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination. The rationale which the court locates or constructs is not likely to be indisputable. But it is not our task to determine the wisdom of the rationale or the legislation. The legislature assays the data available and decides the course to follow.

*Sambs*, 97 Wis. 2d at 371. As noted, in applying the test, we need not decide whether the legislature's action was wise or even prudent. "The 'rational basis' test for equal protection does not require that the legislature choose the best or wisest means to achieve its goals." *Stanhope*, 90 Wis. 2d at 843.

¶ 13. We are satisfied that the statute has a rational basis. The legislature's reasons for shortening the statute of limitations are an extension of the legislature's policy decisions underlying its passage of WIS. STAT. § 893.80. Section 893.80(1g) allows for a notice of disallowance that will expedite the resolution of claims against the government, which is beneficial to both claimants and the government. In reaching this conclusion, we are guided by case law discussing the policy decisions behind § 893.80, and case law involving other equal protection challenges.

¶ 14. Although many cases have explained the purpose behind the notice of claim and notice of injury

statute, no case has specifically applied the rational basis test to the different statutes of limitations incorporated in the statute. We start our analysis by noting that until 1962, the government enjoyed almost complete immunity from suit. This immunity was shattered by the supreme court when it decided *Holytz v. Milwaukee*, 17 Wis. 2d 26, 115 N.W.2d 618 (1962). Then, in *Sambs*, the court explained that the previous immunity from suit enjoyed by the government prior to 1962 was driven by a belief that public funds needed protection from depletion and that individual victims needed to give way to public welfare needs. *Sambs*, 97 Wis. 2d at 371–72. The earlier versions of WIS. STAT. § 893.80 attempted to blunt the effect of *Holytz*. *Sambs*, 97 Wis. 2d at 372–73. The statute required a claimant to give both notice of the claim and notice of the injury. After the enactment of an earlier version of § 893.80, this court observed:

> The purpose of the notice of injury is to notify the governmental entity of the potential claim so that it might investigate and evaluate. The purpose of the notice of claim is to afford the governmental entity an opportunity to effect compromise without suit, and to budget for settlement or litigation.

*Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 593, 530 N.W.2d 16 (Ct. App. 1995) (citations omitted).

¶ 15. These policy considerations have been repeated, most recently in *Thorp v. Town of Lebanon*, 2000 WI 60, 235 Wis. 2d 610, 612 N.W.2d 59. In *Thorp*, our supreme court noted that WIS. STAT. § 893.80(1) "contains two notice provisions. Each provision must be satisfied since each serves a different purpose." *Id.* at ¶ 22. Specifically, "[s]ubsection (1)(a) is the notice of

injury provision. The notice of injury provision allows governmental entities to 'investigate and evaluate' potential claims." *Id.* at ¶ 23 (citation omitted). "Subsection (1)(b) is the notice of claim provision. This provision affords a municipality the opportunity to compromise and settle a claim." *Id.* at ¶ 28 (citation omitted). Thus, the policy decisions behind WIS. STAT. § 893.80(1g) afford governmental bodies an opportunity to investigate and evaluate claims, as well as to compromise and settle claims.

¶ 16. *Binder v. City of Madison*, 72 Wis. 2d 613, 241 N.W.2d 613 (1976), supports our view that WIS. STAT. § 893.80(1g) furthers the underlying policies of § 893.80. Binder challenged, *inter alia*, the notice of claim statutes applicable to cities and school districts on equal protection grounds. *Binder*, 72 Wis. 2d at 620–21. Binder argued that it was an unfair burden for a party injured by a governmental tort-feasor to be required to comply with the notice of claim statute which shortened the statute of limitations. *Id.* Our supreme court, in deciding that the notice of claim statute did not violate the equal protection clause, stated:

> The effect of this delay may be viewed as a shortening of [the] period allowed under the statute of limitations . . . since a plaintiff must file a claim within that period in order to preserve his right to commence judicial action if the claim is rejected. We do not regard this discrimination as onerous. In *Lunday v. Vogelmann* (Iowa, 1973), 213 N.W.2d 904, the Iowa supreme court upheld against an equal protection attack a statute far more restrictive of plaintiff's rights against municipalities than those before us: In Iowa, an action for damages must be commenced within three months of injury, or notice of the injury given within 60 days (with an

additional period of up to 90 days allowed in cases of incapacitation).

*Id.* at 621–22. In finding the notice of claim statute constitutional, the court touched on the very issue presented here:

> The only other burden placed on plaintiffs by [the predecessor statute to § 893.80(1g)] is the requirement that suit be commenced within six months of disallowance of the claim. However, inasmuch as the plaintiff may choose when to file his claim with the city or school district, he may also freely determine when he will start his court action (within the outer boundary of the statute of limitations).

*Id.* Thus, statutes "far more restrictive" than the one presented here have withstood an equal protection challenge. The burden placed on Griffin was slight, inasmuch as she controlled the timing of the action within the six-month period allowed.

¶ 17. We also find instructive cases which have attacked other statutes on equal protection grounds. In *Stanhope*, the supreme court found a rational basis for a statute that capped recovery for injuries occurring as a result of highway defects. *Stanhope*, 90 Wis. 2d at 844. Stanhope argued that the statute limiting his recovery violated the equal protection clause because if he had been injured in an accident with a municipal vehicle, rather than by a highway defect created by the municipality, he would have been entitled to all his damages. The supreme court rejected Stanhope's argument.

> The legislative classification Stanhope challenges expresses a legislative balancing of two purposes: To compensate victims of government

tortfeasors while at the same time protecting the public treasury.

We are unwilling to say that the legislature has no rational basis to fear that full monetary responsibility entails the risk of insolvency or intolerable tax burdens. Funds must be available in the public treasury to pay for essential governmental services; taxes must be kept at reasonable levels; it is for the legislature to choose how limited public funds will be spent. It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefits the citizenry.

*Id.* at 842. Thus, a statute's unequal treatment of injured parties sometimes must give way to the monetary considerations underlying the statute.

¶ 18. In *Sambs*, the cap on injuries caused by highway defects was again attacked on equal protection grounds. *Sambs*, 97 Wis. 2d at 360–61. There, the supreme court acknowledged that the cap was very low; nevertheless, the court reiterated that the legislature had a reasonable basis in limiting the recovery on those injured by the improper maintenance and repair of a highway. *Id.* at 368.

¶ 19. Thus, in evaluating a statute's inequalities, we must view them through the prism of the public policy decisions which drove the statute's passage. In doing so here, we determine that the statute's differing time frames directly resulted from the legislature's concern over the financial solvency of the sued governmental units.

¶ 20. By passing WIS. STAT. § 893.80(1g), and incorporating different time frames into the statute, the legislature intended to promote the preservation of public funds and to expedite certain actions brought

against the government. The notice of claim and injury requirements allow the governmental unit to evaluate the strength of the claimant's case. Legitimate claims can be resolved without the necessity of a formal action. Claims that are baseless, or where the government believes it bears no liability or no damages exist, must be brought within six months if the governmental body sends a formal notice both disallowing the claim and advising the claimant of the shortened period for bringing suit. This procedure forces a speedy hearing on these claims while they are fresh and the witnesses are readily available. The rationale permitting other claimants three years in which to bring suit is simple. Although the remaining claimants are given additional time to bring suit, this scheme also benefits the government by affording it additional time to investigate these claims, settle them, or possibly fund the claim. Thus, there are rational bases for the disparity.

¶ 21. Finally, we find no merit to Griffin's claim that *Blackbourn* supports her position that WIS. STAT. § 893.80(1g) is unconstitutional. First, no equal protection argument was raised in the case. Rather, the dispute centered on whether the school district complied with then § 893.80(1)(b)'s requirement that it serve a notice of disallowance within 120 days of "presentation" of the claim. *Blackbourn*, 174 Wis. 2d at 498. In interpreting this statute, this court determined that the school board did not comply with the statute because its notice of disallowance was sent 148 days after Blackbourn presented his claim. *Id.* at 502. *Blackbourn* supports the bus company's position because it outlines the various legitimate reasons for the passage of the notice of claim statute. *Id.* at 501–02.

The parties and the trial court have suggested a variety of purposes underlying the notice-of-claim

> statute. However, the primary purpose acknowledged by the supreme court is to provide the governmental unit an opportunity to settle the claim without litigation.
>
> . . . .
> The other purposes of the statute cited by the school district are: (1) avoiding prejudice to governmental units as a result of the late filing of claims; and (2) affording sufficient opportunity to investigate all incidents giving rise to tort claims.

*Id.* Thus, *Blackbourn* does not support Griffin's position. We are satisfied that the different time frames found in § 893.80(1g) have a rational basis and, therefore, survive Griffin's equal protection challenge.

### B. *Valid Notice of Disallowance*

¶ 22. Griffin next argues that the notice sent to her was invalid and, as a result, the trial court correctly denied the bus company's summary judgment motion. She submits that the notice is deficient because it advised her that she had six months from the date of the notice, rather than six months from the date of service of the notice to file her claim. She also complains that the notice should have been sent to both her attorney, who filed the notice of claim and injury on her behalf, and her husband, who sought money damages for his loss of consortium. We disagree.

¶ 23. Griffin is correct that the notice of disallowance from Milwaukee County's Clerk contained an error. The statute's language permits suit for six months "from the date of service of the notice of disallowance." The statute also requires the notice of disallowance to contain language which advises the claimant of the six-month limitation for bringing suit. In this instance, the difference between the date of the

notice and the date of service of the notice was one day. Griffin cannot complain that this language misled her because she started her suit well after both dates. Thus, she was not harmed by the error. *Cf. State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985).

¶ 24. Nor do we see any merit in Griffin's argument that WIS. STAT. § 893.80(1g)'s shorter time period for bringing suit should not be enforced against her because neither her attorney nor her husband was served with a copy of the notice of disallowance. In *Cary v. City of Madison*, 203 Wis. 2d 261, 264–67, 551 N.W.2d 596 (Ct. App. 1993), this court determined that the language of the predecessor statute, directing that the notice of disallowance be "served on the claimant," meant that the claimant, not the claimant's attorney, needed to be served with the notice of disallowance in order to invoke the shortened statute of limitation. Griffin's husband's claim was a derivative claim. Griffin's husband could not independently commence suit. Consequently, the statute does not require the governmental body to serve him with a notice of disallowance because he is incapable of starting a suit on his own behalf.

¶ 25. Accordingly, we reverse and remand for the trial court to grant summary judgment to the bus company.

*By the Court.*—Order reversed and cause remanded with directions.