E-Z Roll Off, LLC, Plaintiff-Appellant,

v.

County of Oneida,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2009AP775. Oral argument February 2, 2011.
—Decided July 13, 2011.*

2011 WI 71

(Also reported in 800 N.W.2d 421.)

For the defendant-respondent-petitioner the cause was argued by *Michele M. Ford, Crivello Carlson, S.C.*, Milwaukee, with whom on the brief was *John T. Juettner.*

For the plaintiff-appellant there were briefs and oral argument by *James B. Connell, Crooks, Low & Connell, S.C.*, Wausau.

¶ 1. MICHAEL J. GABLEMAN, J. This is a review of a published decision of the court of appeals reversing the circuit court order granting summary judgment in favor of Oneida County.[1] This case concerns an agree- ment between Oneida County and Waste Management, Inc., (Waste Management) for the disposal of municipal solid waste. The agreement allowed Oneida County to charge Waste Management a $5.25 fee for each ton of municipal solid waste that Waste Management deliv- ered to the Oneida County Solid Waste Facility (the Facility). The agreement in turn allowed Waste Man- agement to charge Oneida County $24.50 per ton to remove all loaded transfer trailers from the Facility and transport them to an approved landfill.

---

[1] *E-Z Roll Off, LLC v. Cnty. of Oneida*, 2010 WI App 76, 325 Wis. 2d 423, 785 N.W.2d 645.

¶ 2. E-Z Roll Off, LLC (E-Z), which was paying a fee of $54.00 to Oneida County for each ton of municipal solid waste it delivered to the Facility, brought suit against Oneida County alleging that the agreement created an illegal restraint of trade in violation of Wis. Stat. § 133.03(1) (2005–06).[2] The circuit court, the Honorable Patrick F. O'Melia presiding, held that E-Z could not bring suit because E-Z had not filed a timely notice of claim in accordance with Wis. Stat. § 893.80(1)(a). The court of appeals reversed, holding that antitrust actions brought pursuant to Wis. Stat. § 133.18 are exempt from the notice of claim requirements found in § 893.80(1). The question before us therefore is whether the notice of claim requirements found in § 893.80(1) apply to antitrust actions brought pursuant to § 133.18. If the notice of claim requirements apply, we must next consider whether E-Z satisfied these requirements.

¶ 3. We hold that antitrust actions brought pursuant to Wis. Stat. § 133.18 are not exempt from the notice of claim requirements found in Wis. Stat. § 893.80(1). Additionally, we hold that E-Z did not meet the requirements of § 893.80(1)(a) when it failed to give Oneida County notice of its claim within the 120–day limitations period. Accordingly, we reverse the court of appeals and conclude that the circuit court properly granted summary judgment in favor of Oneida County.

## I. BACKGROUND

¶ 4. E-Z was founded in 1996 by its owners Todd and Paula Laddusire. It was in the business of collecting solid waste from residential and commercial customers.

---

[2] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

From 1996 to 2003, E-Z was one of several companies that hauled solid waste to the Facility. During this time, Oneida County charged all haulers a $54.00 tipping fee for each ton of municipal solid waste that was delivered to the Facility.[3] A hauler who delivered at least 100 tons of municipal solid waste to the Facility could qualify for a $10 per ton rebate each year. E-Z regularly qualified for this rebate.

¶ 5. On June 25, 2003, Oneida County executed an agreement with Waste Management. Pursuant to this agreement, Oneida County charged Waste Management a $5.25 tipping fee for each ton of municipal solid waste that it delivered to the Facility. All other haulers (including E-Z) continued to pay a $54.00 tipping fee. The agreement also required Waste Management to remove all loaded transfer trailers from the Facility and transport them to an approved landfill. Under the agreement, Oneida County paid Waste Management $24.50 for each ton of municipal solid waste that was loaded onto Waste Management trucks for transportation to such a landfill.

¶ 6. The parties dispute the point in time when E-Z learned of Oneida County's agreement with Waste Management. E-Z contends that it first learned of the agreement in February 2004 when one of its employees was present at the Facility and saw a scale ticket that showed the lower tipping fee charged to Waste Management. Oneida County claims that E-Z received notice of the agreement via a public request for proposals that

---

[3] "Tipping fees are disposal charges levied against collectors who drop off waste at a processing facility. They are called 'tipping' fees because garbage trucks literally tip their back end to dump out the carried waste." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 336 n.1 (2007).

was published in April 2003. In addition, Oneida County claims that Todd Laddusire attended a meeting in June 2003 in which Oneida County Solid Waste Director Bart Sexton advised interested haulers of the proposed $5.25 tipping fee as well as the other terms which were eventually incorporated into Oneida County's contract with Waste Management.

¶ 7. It is undisputed that on February 17, 2004, the Laddusires met with Sexton to present their concerns regarding Oneida County's agreement with Waste Management. The focus of the Laddusires' concern was the $5.25 tipping fee Waste Management paid to Oneida County under the agreement. The Laddusires were upset that Waste Management's tipping fee was dramatically less than the $54.00 tipping fee E-Z paid to Oneida County. At the February 17, 2004 meeting, the Laddusires told Sexton that they believed the agreement created a "monopoly." They demanded that E-Z's tipping fee be reduced to $24.50 per ton. Sexton refused to reduce E-Z's tipping fee.

¶ 8. In April 2004, E-Z filed a written complaint with the Wisconsin Department of Agriculture, Trade and Consumer Protection (DATCP). The complaint alleged that the agreement between Oneida County and Waste Management constituted a monopoly, and that E-Z should be "reimbursed" for the tipping fees it had paid to Oneida County in excess of $5.25 per ton since that agreement was executed. The complaint alleged that this "reimbursement" totaled "about $98,000."

¶ 9. On May 4, 2004, the DATCP forwarded the complaint to Sexton, who responded by letter on May 20. In his response letter, Sexton disputed each of E-Z's charges and went on to state that the contract bidding process had been conducted in accordance with appropriate state statutes. Additionally, Sexton stated that

E-Z, along with any other business entity, would have had the right to submit a bid during the bidding process.

¶ 10. On September 28, 2005, E-Z filed a "Notice of Injury" and "Statement of Claim" with the Oneida County Clerk of Courts. In its Notice of Injury, E-Z asserted that it was injured when Oneida County entered into a conspiracy to restrain trade in violation of Wis. Stat. § 133.03 by executing the agreement with Waste Management. In its Statement of Claim, E-Z claimed $239,814.69 for loss of past earnings and $959,285.76 for loss of future earnings.[4] Oneida County denied E-Z's claim.

¶ 11. On April 20, 2006, E-Z filed suit against Oneida County in the Circuit Court for Oneida County, the Honorable Robert E. Kinney then presiding,[5] seeking (1) a declaratory judgment that Oneida County's agreement with Waste Management constituted an illegal restraint of trade in violation of Wis. Stat. § 133.03(1),[6] and (2) treble damages, attorneys fees, and costs pursuant to Wis. Stat. § 133.18.

---

[4] As we discuss in ¶ 20, in order to sue a governmental entity, a plaintiff must file a "notice of the circumstances of the claim" within 120 days of the event giving rise to the claim and must also file a separate "claim containing the claimant's address and relief sought." For the sake of clarity, we use the phrase "notice of claim" to refer to the "notice of the circumstances of the claim" required by Wis. Stat. § 893.80(1)(a). Further, we use the phrase "statement of claim" to refer to the "claim containing the address of the claimant and an itemized statement of the relief sought" found in Wis. Stat. § 893.80(1)(b).

[5] Judge Kinney retired during the pendency of this action and Judge O'Melia presided over the motion for summary judgment.

[6] Wis. Stat. § 133.03(1) states that:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal. Every

¶ 12. On September 29, 2008, Oneida County filed a motion for summary judgment, arguing that E-Z failed to comply with the notice of claim requirements found in Wis. Stat. § 893.80(1). Specifically, Oneida County argued that E-Z served its notice of claim well beyond the 120–day time limit provided in § 893.80(1)(a). The circuit court agreed with Oneida County and rejected E-Z's argument that antitrust actions brought pursuant to Wis. Stat. § 133.18 are exempt from the notice of claim requirements found in § 893.80(1). The circuit court found that the 120–day limitations period began to accrue on June 25, 2003, when the agreement was signed, and that the Laddusires' September 28, 2005 notice of claim was untimely. Additionally, the circuit court found that E-Z had failed to establish that Oneida County had actual knowledge of the claim and further found that E-Z had failed to establish that Oneida County was not prejudiced by the untimely notice. As a result, the circuit court granted summary judgment in favor of Oneida County.

¶ 13. E-Z appealed and, in a published decision, the court of appeals reversed the judgment of the circuit court.[7] Applying the three-factor test set forth in *Town of Burke v. City of Madison,* 225 Wis. 2d 615, 625, 593 N.W.2d 822 (Ct. App. 1999), the court of appeals concluded that (1) Wis. Stat. § 133.18 contained a specific

person who makes any contract or engages in any combination or conspiracy in restraint of trade or commerce is guilty of a Class H felony, except that, notwithstanding the maximum fine specified in s. 939.50(3)(h), the person may be fined not more than $100,000 if a corporation, or, if any other person, may be fined not more than $50,000.

[7] *E-Z Roll Off,* 325 Wis. 2d 423.

statutory scheme for antitrust actions,[8] *E-Z Roll Off,* 325 Wis. 2d 423, ¶ 18; (2) applying the notice of claim requirements to antitrust actions brought pursuant to § 133.18 would hinder the legislature's preference for prompt resolution of antitrust claims, *Id.*, ¶ 24; and (3) the purposes of providing a notice of claim would not be furthered if the notice of claim requirements were applied to antitrust actions. *Id.*, ¶ 27. The court of appeals held that antitrust actions are exempt from the notice of claim requirements. *Id.*, ¶ 32. Accordingly, the court of appeals reversed the circuit court.

¶ 14. Oneida County then petitioned this court for review, which we granted.

## II. STANDARD OF REVIEW

¶ 15. This case comes before us on summary judgment. "We review the grant of a motion for summary judgment de novo, and apply the methodology specified in Wis. Stat. § 802.08. That is, we determine whether there is any genuine issue as to any material fact, and if not, which party is entitled to judgment as a matter of law." *Borek Cranberry Marsh, Inc. v. Jackson Cnty.,* 2010 WI 95, ¶ 11, 328 Wis. 2d 613, 785 N.W.2d 615.

¶ 16. This case also involves the interpretation of the notice of claim statute, found in Wis. Stat. § 893.80, and the interpretation of the antitrust damages statute, found in Wis. Stat. § 133.18. The interpretation of a

---

[8] As we explain in Part III.A.1., a "specific statutory scheme" exists when the terms of a specific statute conflict with the general notice of claim requirements found in Wis. Stat. § 893.80(1)(a).

statute is a question of law that we review de novo. *Hocking v. City of Dodgeville*, 2010 WI 59, ¶ 17, 326 Wis. 2d 155, 785 N.W.2d 398.

¶ 17. Whether a governmental entity had actual notice of a plaintiff's claim presents a mixed question of fact and law. *Olsen v. Twp. of Spooner*, 133 Wis. 2d 371, 377, 395 N.W.2d 808 (Ct. App. 1986). What the governmental entity knew about the plaintiff's claim is a factual finding and may not be overturned unless clearly erroneous. *Id.* Whether the governmental entity's knowledge constituted actual notice under the law is a legal conclusion we review de novo. *Id.* The plaintiff bears the burden of proving actual notice. *Weiss v. City of Milwaukee*, 79 Wis. 2d 213, 227, 255 N.W.2d 496 (1977).

¶ 18. Whether a governmental entity suffered prejudice is also a mixed question of fact and law. *Olsen*, 133 Wis. 2d at 378. We uphold the circuit court's factual findings unless clearly erroneous. *Id.* at 378–79. How these facts fit the statutory concept of prejudice is a question of law we review de novo. *Id.* at 379. The plaintiff bears the burden of proving lack of prejudice. *Weiss*, 79 Wis. 2d at 227.

## III. DISCUSSION

¶ 19. This case requires us to examine two issues. First, we consider whether antitrust claims brought pursuant to Wis. Stat. § 133.18 are exempt from the notice of claim requirements found in Wis. Stat. § 893.80. Second, we consider whether E-Z satisfied the notice of claim requirements set forth in § 893.80(1). We discuss each issue in turn.

## A. Antitrust Claims Brought Pursuant to Wis. Stat. § 133.18 Are Not Exempt from the Notice of Claim Requirements Found in Wis. Stat. § 893.80(1)

¶ 20. In order to commence a lawsuit against a governmental entity, a claimant must, as a precursor to actually filing suit, serve written notice of the circumstances of the claim within 120 days after the happening of the event.[9] Wis. Stat. § 893.80(1). Additionally, a claimant must present a written claim to an appropriate official. § 893.80(1)(b). When such a claim is disal-

---

[9] Wis. Stat. § 893.80(1) reads in relevant part:

(1) Except as provided in subs. (1g), (1m), (1p) and (8), no action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employee of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employee under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employee; and

(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant fire company, corporation, subdivision or agency and the claim is disallowed.

We discuss exceptions to this general rule in Part III.B.2.

lowed, a claimant has six months to bring suit. § 893.80(1g).[10]

¶ 21. We initially recognized in *Department of Natural Resources v. City of Waukesha,* 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994), the plain meaning of Wis. Stat. § 893.80: "[t]he language of the statute clearly and unambiguously makes the notice of claim requirements applicable to all actions." However, we subsequently acknowledged in *Auchinleck* that our holding in *Waukesha* had been "too broad." *State ex. rel Auchinleck v. Town of LaGrange,* 200 Wis. 2d 585, 597, 547 N.W.2d 587 (1996) (exempting claims for open records violations and open meetings violations from the application of Wis. Stat. § 893.80).

¶ 22. A number of cases following *Auchinleck* created additional exceptions to the notice of claim requirements. *See Gillen v. City of Neenah,* 219 Wis. 2d 806, 822–23, 580 N.W.2d 628 (1998) (exempting actions to enjoin violations of the public trust doctrine under Wis. Stat. § 30.294); *Little Sissabagama Lake Shore Owners Ass'n, Inc., v. Town of Edgewater,* 208 Wis. 2d 259, 265, 559 N.W.2d 914 (Ct. App. 1997) (exempting actions to appeal a county board's determination regarding the requirements for tax-exempt status under Wis. Stat. § 70.11(20)(d)); *Gamroth v. Vill. of Jackson,* 215 Wis. 2d 251, 259, 571 N.W.2d 917 (Ct. App. 1997) (exempting actions to appeal special assessments under Wis. Stat. § 66.60(12)(a)).

---

[10] A claim may be disallowed in two ways. First, the governmental entity may serve a written notice of disallowance on the claimant. Wis. Stat. § 893.80(1g). Second, if the governmental entity fails to act within 120 days, the claim is considered disallowed. *Id.*

¶ 23. In *Town of Burke*, 225 Wis. 2d 615, the court of appeals provided a structure for analyzing our notice of claim jurisprudence. After examining our prior notice of claim case law, the court of appeals concluded that three factors should be considered when determining whether to exempt a specific statute from the notice of claim requirements: (1) whether there is a specific statutory scheme for which the plaintiff seeks exemption; (2) whether enforcement of the notice of claim requirements found in Wis. Stat. § 893.80 would hinder a legislative preference for a prompt resolution of the type of claim under consideration; and (3) whether the purposes for which § 893.80 was enacted would be furthered by requiring that a notice of claim be filed. *Id.* at 625. Applying this framework, the *Town of Burke* court concluded that the municipal annexation procedures set forth in Wis. Stat. § 66.021 were exempt from the notice of claim requirements. *Id.* at 626.

¶ 24. The three factors articulated in *Town of Burke* have since become the accepted framework by which our appellate courts have considered exceptions to the notice of claim requirements found in Wis. Stat. § 893.80. *See Ecker Bros. v. Calumet Cnty.*, 2009 WI App 112, ¶ 6, 321 Wis. 2d 51, 722 N.W.2d 240; *Oak Creek Citizen's Action Comm. v. City of Oak Creek*, 2007 WI App 196, ¶ 7, 304 Wis. 2d 702, 738 N.W.2d 168; *Nesbitt Farms, LLC v. City of Madison*, 2003 WI App 122, ¶ 9, 265 Wis. 2d 422, 665 N.W.2d 379. We find the *Town of Burke* test appropriate and therefore apply it to determine whether antitrust actions brought pursuant to Wis. Stat. § 133.18 are exempt from the notice of claim requirements found in § 893.80.

### 1. Specific Statutory Scheme

¶ 25. The first factor we consider is "whether there is a specific statutory scheme for which the plaintiff seeks exemption" from the notice of claim requirements found in Wis. Stat. § 893.80. *Town of Burke,* 225 Wis. 2d at 625. If a statute provides a specific statutory scheme that conflicts with the general intent behind the 120–day time limit provided in Wis. Stat. § 893.80, then the specific statutory scheme will take precedence. *City of Racine v. Waste Facility Siting Bd.,* 216 Wis. 2d 616, 625, 575 N.W.2d 712 (1998).

¶ 26. In the instant case, the court of appeals relied on our decision in *Gillen v. City of Neenah* to conclude that the statutory scheme for antitrust actions brought pursuant to Wis. Stat. § 133.18 takes precedence over the general notice of claim requirements of § 893.80(1). We disagree. In *Gillen,* we held that when a statute allows a claimant to seek immediate injunctive relief, that statute irreconcilably conflicts with the general notice of claim provisions of Wis. Stat. § 893.80, "which requires a plaintiff to provide a governmental body with a notice of claim, and to wait 120 days or until the claim is disallowed before filing an action." *Gillen,* 219 Wis. 2d at 822. The *Gillen* court concluded that, because application of the 120–day time limit imposed by Wis. Stat. § 893.80(1)(b) clearly frustrated the plaintiffs' specific right to immediate injunctive relief, the procedures setting forth injunctive relief took precedence over the general notice provisions of § 893.80.

¶ 27. As illustrated in *Gillen,* our appellate courts have generally concluded that a specific statutory scheme conflicts with the notice of claim requirements

found in Wis. Stat. § 893.80 when the specific statute contains a more restrictive limitations period than the 120–day notice of claim requirements. *See id.* at 821–22 (specific statute allowed immediate injunctive relief); *Auchinleck,* 200 Wis. 2d at 592 (specific statute allowed an action to be commenced within 20 days); *Town of Burke,* 225 Wis. 2d at 625 (specific statute required an action to be commenced within 90 days); *Little Sissabagama,* 208 Wis. 2d at 266 (specific statute required an action to be commenced within 90 days); *Oak Creek Citizen's Action Comm.,* 304 Wis. 2d at 709 (specific statute required clerk to take action within 15 days and common council to take action within 30 days).

¶ 28. While we find the reasoning of *Gillen* to be instructive, we conclude that its holding is inapplicable to the present case. In contrast to the plaintiffs in *Gillen,* E-Z does not seek immediate injunctive relief under § 133.16. Rather, E-Z seeks declaratory relief and damages under Wis. Stat. § 133.18.[11] Unlike immediate injunctive relief, which "is designed to prevent injury," *Gillen,* 219 Wis. 2d at 821, declaratory relief is not, by its nature, in conflict with providing governmental

---

[11] The prayer for relief contained in E-Z's complaint requests only (1) a declaratory judgment that the agreement is in violation of Wis. Stat. § 133.03(1), and (2) damages, attorneys fees, and costs pursuant to Wis. Stat. § 133.18. E-Z made no request for an injunction under Wis. Stat. § 133.16. The circuit court clarified this at the summary judgment hearing:

[Counsel for E-Z]: . . . We're asking, Your Honor, for injunctive relief so this method of operation stops and stops immediately.

[The Court]: See, I didn't read your complaint as asking for injunctive relief, but perhaps I missed that.

[Counsel for E-Z]: Let me find it. Well, maybe it would be better stated as to—as to declaratory relief, that is declaring the contract by illegal I think is the way I phrased it in my complaint.

entities a 120–day period to review a claim.[12] We note that the Declaratory Judgment Act, found in Wis. Stat. § 806.04, provides no statute of limitations. We further note that § 133.18 provides a six-year limitations period for actions seeking damages for violations of antitrust law.[13] Accordingly, neither E-Z's claim for declaratory relief nor E-Z's claim for damages is brought pursuant to a specific statute whose terms conflict with the general notice of claim requirements found in Wis. Stat. § 893.80.

---

[12] "Declaratory relief" is "a binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." *Black's Law Dictionary* 846 (7th ed. 1999). In contrast, "injunctive relief" entitles a party to "a court order commanding or preventing an action," *Id.* at 788, and "is usually requested simultaneously with, or soon after, commencing an action by a motion for a temporary restraining order and/or a preliminary injunction." *Gillen,* 219 Wis. 2d at 821.

[13] Wisconsin Stat. § 133.18(1)(b) states that "[n]o damages, interest on damages, costs or attorney fees may be recovered under this chapter from any local governmental unit or against any official or employee of a local governmental unit who acted in an official capacity." Subsection (1)(b) is seemingly in tension with § 133.18(6), which caps the amount of monetary damages a plaintiff may recover in a suit against a governmental entity. The circuit court, relying on subsection (1)(b), struck E-Z's request for treble damages, costs, and attorney fees under § 133.18(1)(a). However, the circuit court expressly reserved the question of whether the language of subsection (1)(b) "precludes recovery of *any* monetary damages against [Oneida] County for violations alleged under any provision in Wis. Stat. ch. 133." Neither the circuit court nor the court of appeals further addressed this tension because both courts concluded that the question of whether the notice of claim statute applied was dispositive. This issue was not briefed before this court and we therefore need not address whether E-Z pled a viable claim for damages against Oneida County pursuant to § 133.18.

¶ 29. We therefore hold that § 133.18 does not contain a specific statutory scheme in conflict with the notice of claim requirements found in § 893.80.[14]

## 2. Legislative Preference for Prompt Resolution

■■■

¶ 30. The second factor we consider is "whether enforcement of Wis. Stat. § 893.80 would hinder a legislative preference for a prompt resolution of the type of claim under consideration." *Town of Burke*, 225 Wis. 2d at 625. We therefore examine whether the legislature has expressed a preference for prompt resolution of antitrust damages actions pursuant to Wis. Stat. § 133.18 and, if so, whether applying the 120–day notice of claim requirements would somehow hinder that preference.

¶ 31. Wisconsin Stat. § 133.18(5) requires that "[e]ach civil action under this chapter and each motion or other proceeding in such action shall be expedited in every way and shall be heard at the earliest practicable date." This language demonstrates the legislature's

---

[14] The court of appeals also relied on *Nesbitt* in holding that Wis. Stat. § 133.18 actions constituted a specific statutory scheme. *Nesbitt Farms, LLC v. City of Madison*, 2003 WI App 122, 265 Wis. 2d 422, 665 N.W.2d 379. In *Nesbitt*, the court of appeals considered whether condemnation appeals brought under Wis. Stat. § 32.05 were subject to the notice of claim requirements. The *Nesbitt* court held that Wis. Stat. § 32.05 provided a detailed "procedure and deadline for commencing [condemnation] actions, as well as specifying other matters, such as how other interested parties may join the appeal and what issues may be tried." *Id.*, ¶ 10. Wis. Stat. § 133.18 contains no such detailed procedures. Instead, § 133.18 merely creates a cause of action, defines the damages, and provides a lengthy six-year statute of limitations. *Nesbitt* is, therefore, easily distinguishable.

preference for the prompt resolution of antitrust claims brought pursuant to Wis. Stat. § 133.18. E-Z argues that applying the notice of claim requirements found in Wis. Stat. § 893.80 to antitrust actions brought pursuant to § 133.18 hinders *prompt resolution of such claims.* As the circuit court correctly recognized, applying the notice of claim requirements to antitrust actions brought pursuant to § 133.18 promotes, rather than hinders, the legislature's preference for expediency in the adjudication of such claims.

¶ 32. This is so because ordinarily a plaintiff has six years to seek damages pursuant to Wis. Stat. § 133.18. *See* § 133.18(2). However, if a plaintiff advances a claim against a governmental entity, it is subject to the notice of claim requirements. *See* Wis. Stat. § 893.80. In that case, the plaintiff would be required to serve written notice of the claim upon the governmental entity within 120 days after the event giving rise to the claim. *See* § 893.80(1)(a). If the claim is disallowed, the plaintiff whose claim has been denied would have only six months, as opposed to the six years otherwise afforded by Wis. Stat. § 133.18(2), to file the complaint. *See* § 893.80(1g). It is clear that such timelines encourage, rather than hinder, the prompt resolution of § 133.18 actions.

¶ 33. Accordingly, we hold that enforcing the general notice of claim requirements found in Wis. Stat. § 893.80 promotes, rather than hinders, the legislature's preference for prompt resolution of such claims.

### 3. Furthering the Purposes of the Notice of Claim Statute

¶ 34. The third factor we consider is "whether the purpose for which § 893.80(1) was enacted would be

furthered by requiring that a notice of claim be filed." *Town of Burke*, 225 Wis. 2d at 625. We have previously held that the notice of claim statute serves two purposes: (1) to give governmental entities the opportunity to investigate and evaluate potential claims, and (2) to afford governmental entities the opportunity to compromise and budget for potential settlement or litigation. *Thorp v. Town of Lebanon*, 2000 WI 60, ¶¶ 23, 28, 235 Wis. 2d 610, 612 N.W.2d 59.

¶ 35. E-Z argues that the legislative purpose of Wis. Stat. § 893.80(1) was furthered when Oneida County was given the opportunity to settle and negotiate the dispute. Thus, E-Z argues, applying § 893.80(1) to bar its claim would thwart the very purpose of § 893.80(1) because E-Z would be punished for attempting to negotiate with Oneida County before resorting to the judicial system.

¶ 36. We find E-Z's argument unpersuasive. First, applying the notice of claim statute to antitrust actions brought pursuant to Wis. Stat. § 133.18 clearly allows governmental entities a greater opportunity to investigate and evaluate potential claims by requiring claimants to file their notice of claim within 120 days of the event giving rise to the claim. If the notice of claim statute were not applied to § 133.18 antitrust actions, claimants would have six years to file their complaint.

¶ 37. The additional sixty-eight months during which claimants could bring their actions would obviously hamper a governmental entity's ability to investigate and evaluate claims. *See, e.g., Olsen*, 133 Wis. 2d at 380 (holding in a condemnation action that three years of vegetative growth made a determination of any damages difficult). It is axiomatic that a governmental entity can more effectively investigate the circumstances surrounding a claim that accrued within the

120 days preceding the receipt of notice than it can investigate a claim that accrued up to six years in the past. In a similar vein, it is more likely that with the passage of time such investigation and evaluation will become more problematic as governmental employees leave their posts, memories fade, and witnesses become unavailable.

¶ 38. Second, applying the notice of claim statute to antitrust actions brought pursuant to Wis. Stat. § 133.18 allows governmental entities a greater opportunity to compromise and budget for potential settlement or litigation. If the notice of claim statute were not applied to antitrust actions brought pursuant to § 133.18, governmental entities would no longer be provided with a 120–day period in which to review the claim before the claimant could file suit. We are compelled by the nature of E-Z's argument to note the obvious: it is easier for a governmental entity to compromise with a claimant when the governmental entity has the 120–day period required by the notice of claim statute in which it may review the claim and negotiate with the claimant prior to the commencement of litigation. Further, this period grants governmental entities 120 days in which to adjust budgets to account for potential settlement or litigation. As a result, the purposes for which the notice of claim statute was enacted would be fulfilled if parties filing antitrust actions pursuant to § 133.18 were required to follow the general notice of claim requirements.

¶ 39. Applying the three-factor *Town of Burke* test, we conclude that Wis. Stat. § 133.18 antitrust actions are not exempt from the notice of claim requirements set forth in Wis. Stat. § 893.80. We therefore next discuss whether E-Z satisfied the notice of claim requirements.

## B. Notice of Claim Requirements

¶ 40. Under Wis. Stat. § 893.80(1), no action may be brought against a governmental subdivision unless paragraphs (a) and (b) are satisfied:

> (a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the ... governmental subdivision .... Failure to give the requisite notice shall not bar action on the claim if the ... subdivision ... had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the ... subdivision ... ; and

> (b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant ... subdivision ... and the claim is disallowed.

¶ 41. First, we consider whether the notice of claim was filed within 120 days of the "happening of the event." Wis. Stat. § 893.80(1)(a). This requires us to consider whether the continuing violation doctrine applies in Wisconsin.[15] Second, we consider whether Oneida County had actual notice of the claim and whether it suffered prejudice.

---

[15] The "continuing violation doctrine" holds that "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338–39 (1971).

### 1. 120–Day Notice Requirement

¶ 42. Wisconsin Stat. § 893.80(1) requires that E-Z serve its notice of claim on Oneida County "[w]ithin 120 days after the happening of the event giving rise to the claim . . . ." Oneida County argues that the "event" giving rise to E-Z's claim was the signing of the agreement with Waste Management on June 25, 2003. E-Z contends that its cause of action did not accrue until discovery of the agreement and that such discovery did not occur until February 2004. *See* Wis. Stat. § 133.18(4).

¶ 43. We need not decide when E-Z's cause of action began to accrue because, in either case, E-Z's notice of claim was untimely. E-Z filed its notice of claim with the Oneida County Clerk of Court on September 28, 2005, well over 120 days after both the date on which the agreement was executed (June 25, 2003), as well as the date E-Z contended it learned of the agreement (February 2004).

¶ 44. E-Z also argues that each time it paid a higher tipping fee than Waste Management, a new cause of action accrued to E-Z. Consistent with this assertion, E-Z argues that the notice of claim that it filed on September 28, 2005, was timely because the notice was filed within 120 days of E-Z having paid a higher tipping fee than Waste Management.

¶ 45. In support of this assertion, E-Z cites *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321 (1971). In that case, the United States Supreme Court concluded that in the context of a continuing conspiracy to violate the federal antitrust laws, "each time a plaintiff is injured by an act of the defendant a cause of action accrues to him to recover the damages caused by that act

and that, as to those damages, the statute of limitations runs from the commission of the act." *Id.* at 338.

¶ 46. E-Z, however, fails to cite any authority applying the continuing violations doctrine to the notice of claim statute under Wisconsin law. More importantly, E-Z also ignores a purpose of the notice of claim statute, which is to afford governmental entities the opportunity to compromise and budget for potential settlement or litigation. *See Thorp,* 235 Wis. 2d 610, ¶¶ 23, 28. If the continuing violations doctrine were to apply, it would be much more difficult for governmental entities to budget for potential litigation. For example, under E-Z's theory, a cause of action would accrue to E-Z each time it paid a higher tipping fee during the 10–year length of Oneida County's agreement with Waste Management. The legislature did not intend for governmental entities to be exposed to indefinite periods of liability for potential violations of Wis. Stat. § 133.18.[16] Such a result would be unreasonable given the purposes of the notice of claim requirements found in § 893.80.[17]

---

[16] Wisconsin Stat. § 893.80(1)(a) provides that a claimant must give notice "[w]ithin 120 days after the happening of the *event* giving rise to the claim . . . ." (Emphasis added.) We recognize that the general rule under Wis. Stat. § 990.001(1) is that we are to interpret the singular word "event" to include the plural "events" unless this "would produce a result inconsistent with the manifest intent of the legislature." The manifest intent of the legislature in Wis. Stat. § 893.80 is not to expose governmental entities to potentially infinite periods of liability. We therefore conclude that the general rule in § 990.001(1) is inapplicable in the instant case.

[17] "We attempt, whenever possible, to give reasonable effect to every word in a statute, avoiding both surplusage and absurd or unreasonable results." *Hocking v. City of Dodgeville,* 2010 WI 59, ¶ 18, 326 Wis. 2d 155, 785 N.W.2d 398.

745

¶ 47. E-Z filed its notice of claim with the Oneida County Clerk of Court on September 28, 2005, well over 120 days after both the date on which the agreement was executed (June 25, 2003), as well as the date E-Z contended it learned of the agreement (February 2004). Having concluded that E-Z did not satisfy the first sentence of Wis. Stat. § 893.80(1)(a), we must next consider whether the actual notice and prejudice exception contained in Wis. Stat. § 893.80(1)(a) applies.

### 2. E-Z Failed to Show That Oneida County Suffered No Prejudice

¶ 48. An exception to the general 120–day rule exists when a claimant demonstrates that two conditions are met: (1) the governmental entity "had actual notice of the claim," and (2) the governmental entity has not been prejudiced by the delay or failure to give notice. Wis. Stat. § 893.80(1)(a). Because we determine that E-Z failed to show that Oneida County suffered no prejudice, we need not address whether Oneida County received actual notice of E-Z's claim. We therefore address only whether E-Z met its burden to produce evidence that Oneida County suffered no prejudice because of the delayed notice.

¶ 49. In *Olsen v. Spooner Township* we held that prejudice "refers to a delay which results in the inability of claimants to adequately defend their case." 133 Wis. 2d at 379 (internal citations omitted). This holding emphasized that one of the purposes of the notice of claim statute "is to ensure that governmental units have sufficient opportunity to escape prejudice by promptly investigating claims." *Id.* at 380. As the party

opposing summary judgment, E-Z "may not rest upon the mere allegations or denials of the pleadings . . . ." Wis. Stat. § 802.08(3). "The ultimate burden [] of demonstrating that there is sufficient evidence . . . to go to trial at all (in the case of a motion for summary judgment) is on the party that has the burden of proof on the issue that is the object of the motion." *Transp. Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290, 507 N.W.2d 136 (Ct. App. 1993). E-Z bears the burden of proving that Oneida County suffered no prejudice. *Weiss*, 79 Wis. 2d at 227. Therefore, E-Z "must set forth specific facts showing that there is a genuine issue for trial" on the issue of prejudice. § 893.08(3).

¶ 50. The circuit court found that E-Z set forth no facts showing that Oneida County suffered no prejudice. The circuit court went so far as to state that E-Z "provides no evidentiary citation" for its entire prejudice argument. We agree.

¶ 51. E-Z bore the burden to produce evidence that the delayed notice of claim did not harm Oneida County's ability to adequately defend its case. E-Z introduced no such evidence. The depositions of Todd Laddusire and Bart Sexton—the only significant evidentiary materials introduced at the summary judgment proceeding—did not touch on the issue of prejudice.

¶ 52. The circuit court cautioned the parties early in the litigation that the issue of prejudice would require substantial discovery. When the circuit court denied Oneida County's motion for judgment on the pleadings, it cautioned both parties that:

> The determination as to whether E-Z is barred from bringing this action for failing to comply with the notice of claims requirements is a complex issue that would likely necessitate extensive factual support. Specifically,

failing to comply with the time limits in § 893.80 does not serve as an automatic bar to an action. Even if plaintiff fails to satisfy these time requirements, an action still survives if the plaintiff can show that the defendant had actual notice of the claim and that the defendant was not prejudiced by a delay of, or failure to provide, the requisite notice. § 893.80(1)(a). The determination of whether the County had actual notice of the claim and whether any prejudice exists are intensive factual issues that will likely require extensive discovery.

Despite having received such guidance from the circuit court, E-Z inexplicably failed to conduct any discovery on the issue of prejudice.

¶ 53. E-Z could have asked Sexton a number of questions to determine whether Oneida County did or did not suffer prejudice because of the delayed notice. For example, E-Z never questioned Sexton to determine whether Oneida County suffered from an inability to investigate the claim because of the delayed notice. In addition, E-Z never asked whether either Sexton or Oneida County had difficulty finding documents or other witnesses relevant to the proceedings. E-Z simply failed to introduce evidence on the issue of prejudice. Because of this, the circuit court properly granted summary judgment in favor of Oneida County.

## IV. CONCLUSION

¶ 54. We hold that antitrust actions brought pursuant to Wis. Stat. § 133.18 are not exempt from the notice of claim requirements found in Wis. Stat. § 893.80(1). Additionally, we hold that E-Z did not meet the requirements of § 893.80(1)(a) when it failed to give Oneida County notice of its claim within the 120–day limitations period. Accordingly, we reverse the court of

748

appeals and conclude that the circuit court properly granted summary judgment in favor of Oneida County.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 55. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). Appellate courts apply a three-part test to determine whether the notice requirement of Wis. Stat. § 893.80(1) (2009–10)[1] applies to the claim under review. *Oak Creek Citizen's Action Comm. v. City of Oak Creek*, 2007 WI App 196, ¶ 7, 304 Wis. 2d 702, 738 N.W.2d 168. I conclude that E-Z Roll Off, LLC (E-Z) makes a restraint of trade claim under ch. 133 of the Wisconsin Statutes that meets the three-part test for an exception to the requirements of § 893.80(1): (1) ch. 133 provides a specific statutory scheme for the identification and resolution of claims; (2) compliance with § 893.80(1) would hinder the legislature's preference for prompt action on ch. 133 claims; and (3) the purposes for which § 893.80(1) was enacted would not be furthered by requiring a notice of claim to be filed for ch. 133 claims. Accordingly, I would affirm the court of appeals and I respectfully dissent from the majority opinion.

## I. BACKGROUND

¶ 56. E-Z was in the solid waste hauling business.[2] It provided waste containers to residential, commercial and construction customers. E-Z hauled the

---

[1] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated. (The 2005–06 are applicable to the notice question presented; however, the 2009–10 statutes referenced herein are the same as the 2005–06 version of § 893.80(1) in all relevant parts.)

[2] E-Z went out of business in May, 2008.

waste it collected to the Oneida County landfill, and Oneida County charged E-Z a per ton tipping fee to utilize the landfill.

¶ 57. E-Z paid a $54 per ton tipping fee for its use of the landfill, less a $10 per ton discount when E-Z brought a sufficient volume of waste to Oneida County's landfill. In February 2004, an employee of E-Z saw a receipt from the Oneida County landfill that showed Waste Management Wisconsin, Inc. (Waste Management) was being charged only $5.25 per ton as a tipping fee by Oneida County.

¶ 58. Apparently, the lower tipping fee accorded to Waste Management was part of the June 25, 2003 contract[3] between Waste Management and Oneida County wherein Waste Management agreed to transport municipal solid waste for Oneida County for $24.50 per ton and Oneida County agreed to charge Waste Management only a $5.25 tipping fee rather than the usual $54 per ton rate.

¶ 59. On February 17, 2004, the Laddusires, who own E-Z, met with Bart Sexton, the Oneida County Solid Waste Director, to complain about the high tipping fee E-Z was paying and to request a reduction of its tipping fee. Sexton refused their request, and in April 2004 E-Z filed a written complaint with the Wisconsin Department of Agriculture, Trade and Consumer Protection (Consumer Protection agency). Although the Consumer Protection agency forwarded E-Z's complaint to Oneida County on May 4, 2004, the Consumer Protection agency took no further action on the complaint.

¶ 60. On September 28, 2005, E-Z filed a "Notice of Injury" with Oneida County, in which it alleged that

---

[3] Compl., ¶ 3.

the preferential tipping fee that Oneida County granted to Waste Management was a violation of Wis. Stat. § 133.03(1). It alleged that it had lost past and future earnings due to the lower prices that Waste Management was able to charge its customers because of the lower tipping fee that Waste Management was accorded by Oneida County for the tipping it did at the landfill.

¶ 61. E-Z filed this action on April 20, 2006. Oneida County moved to dismiss, alleging that E-Z failed to comply with the notice of claim requirements of Wis. Stat. § 893.80(1), and the circuit court dismissed E-Z's claim. The court of appeals reversed, concluding that ch. 133 claims were excepted from compliance with § 893.80(1). *E-Z Roll Off, LLC v. Cnty. of Oneida*, 2010 WI App 76, ¶ 1, 325 Wis. 2d 423, 785 N.W.2d 645.

## II. DISCUSSION

### A. Standard of Review

¶ 62. The circuit court dismissed E-Z's claim on summary judgment. We review summary judgment using the same methodology as did the circuit court and the court of appeals. *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶ 12, 328 Wis. 2d 436, 787 N.W.2d 6. This summary judgment turns on statutory interpretation. Statutory interpretation presents a question of law for our independent review, in which we benefit from the discussions in previous court decisions. *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581. As we interpret Wis. Stat. § 893.80(1), we assess its interaction with the ch. 133 claim made herein. The interaction of E-Z's ch. 133 claim with the obligations set out in § 893.80(1) presents a question of law for our independent consider-

ation. *Nesbitt Farms, LLC v. City of Madison,* 2003 WI App 122, ¶ 4, 265 Wis. 2d 422, 665 N.W.2d 379.

## B. E-Z's Contention

¶ 63. E-Z contends that Oneida County violated Wis. Stat. § 133.03(1) through its contract with Waste Management. Oneida County contracted to pay Waste Management $24.50 per ton for solid waste removal, and combined that payment with a $5.25 per ton tipping fee that Oneida County charged Waste Management. This contractual tipping fee of $5.25 is a $49.75 per ton reduction in charges on the solid waste that Waste Management dumped into the Oneida County landfill, not just solid waste that is hauled for Oneida County. E-Z alleged that the contract was an unreasonable restraint of trade in that it "permits Waste Management, Wisconsin, Inc., to under bid and drive out competition in Oneida County and the areas which the Oneida County Transfer Station has traditionally served,"[4] because Waste Management was charged $49.75 less per ton to dump solid waste at the Oneida County landfill than were other users of the landfill.

¶ 64. Stated otherwise, E-Z alleges that if Waste Management had been required to pay the $54 per ton tipping fee as E-Z was, Waste Management would have had to increase the prices it offered to customers for whose business E-Z was competing. It is argued that the lower tipping fee permitted Waste Management to compete unfairly with E-Z.

¶ 65. In regard to Wis. Stat. § 893.80(1), E-Z does not argue that it timely filed a notice of claim. Rather, E-Z contends that it is not required to comply with § 893.80(1) because its ch. 133 claim falls outside of the

---

[4] Compl., ¶¶ 3,4,6,7.

scope of § 893.80(1)'s command, and further, even if it were required to comply with § 893.80(1), Oneida County had actual notice of its claim. The court of appeals agreed with E-Z's first argument, concluding that ch. 133 claims are not required to comply with § 893.80(1). *E-Z Roll Off*, 325 Wis. 2d 423, ¶ 1. I agree with the court of appeals.

## C. Statutory Concerns

### 1. Notice of claim

¶ 66. Wisconsin Stat. § 893.80(1) provides in relevant part:

> Except as provided in subs. (1g), (1m), (1p) and (8),[5] no action may be brought or maintained against any . . . political corporation, governmental subdivision or agency thereof . . . for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:
>
> (a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the . . . political corporation, governmental subdivision or agency . . . under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if . . . the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant . . .; and
>
> (b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk . . . and the claim is disallowed.

---

[5] None of these listed exceptions apply here.

¶ 67. Although we once stated that Wis. Stat. § 893.80(1) applies to all types of actions, not just to tort actions, *DNR v. City of Waukesha*, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994), we have modified that statement as being overly broad. *State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 597, 547 N.W.2d 587 (1996). In addition, numerous appellate opinions have identified various exceptions to the statutory notice of claim requirements. *See id.* at 596 (noting that § 893.80(5) expressly states that specific rights and remedies provided by other statutes take precedence over the provisions of § 893.80 and concluding that § 893.80(1) does not apply to claimed violations of the open records law); *see also Gillen v. City of Neenah*, 219 Wis. 2d 806, 822–23, 580 N.W.2d 628 (1998) (concluding that § 893.80(1) does not apply to actions under Wis. Stat. § 30.294 to enjoin violations of the public trust doctrine); *Oak Creek*, 304 Wis. 2d 702, ¶ 2 (concluding that § 893.80(1) does not apply to an action to compel a city to comply with the direct legislation statute); *Town of Burke v. City of Madison*, 225 Wis. 2d 615, 617–18, 593 N.W.2d 822 (Ct. App. 1999) (concluding that actions objecting to annexation brought under Wis. Stat. § 66.021 are not required to comply with § 893.80(1)); *Gamroth v. Vill. of Jackson*, 215 Wis. 2d 251, 259, 571 N.W.2d 917 (Ct. App. 1997) (concluding that special assessment appeals brought under Wis. Stat. § 66.60(12)(a) fall outside of § 893.80(1)'s requirements).

¶ 68. Based on our analysis in *Auchinleck*, a three-part test has evolved by which courts assess whether the claimant is required to comply with Wis. Stat. § 893.80(1) for the claim presented. *Oak Creek*, 304 Wis. 2d 702, ¶ 7 (citing *Nesbitt Farms*, 265 Wis. 2d 422, ¶ 9. This three-part test provides:

"(1) whether there is a specific statutory scheme for which the plaintiff seeks exemption; (2) whether enforcement of § 893.80(1), Stats., would hinder a legislative preference for a prompt resolution of the type of claim under consideration; and (3) whether the purposes for which § 893.80(1) was enacted would be furthered by requiring that a notice of claim be filed."

*Id.* (quoting *Nesbitt Farms,* 265 Wis. 2d 422, ¶ 9). Accordingly, I begin with Wis. Stat. § 133.03(1), the claim herein made.

### 2. Wisconsin Stat. § 133.03(1)

¶ 69. E-Z claims anticompetitive conduct that it alleges is regulated by ch. 133, specifically Wis. Stat. § 133.03(1). Section 133.03(1) addresses anticompetitive contracts in restraint of trade. Section 133.03(1) provides in relevant part: "Unlawful contracts; conspiracies. (1) Every contract . . . in restraint of trade or commerce is illegal." It is this § 133.03(1) claim that the circuit court dismissed on summary judgment because the notice of claim provisions of Wis. Stat. § 893.80(1) had not been met. Accordingly, I consider the viability of E-Z's ch. 133 claim in light of § 893.80(1) and the requisite three-part test for exceptions thereto.

### a. Specific statutory scheme

¶ 70. Chapter 133 sets out a specific statutory scheme that addresses anticompetitive conduct that is quite comprehensive. First, it defines those who are covered by the prohibitions contained therein. Wis. Stat. § 133.02(3). Second, it sets out various prohibited practices: Wis. Stat. § 133.03 (unlawful contracts; conspiracies), Wis. Stat. § 133.04 (price discrimination; intent to destroy competition), Wis. Stat. § 133.05 (se-

cret rebates; unfair trade practices) and Wis. Stat. § 133.06 (interlocking directorates). Third, ch. 133 provides for discovery in regard to alleged violations. Wis. Stat. § 133.13. Fourth, remedies are established for contraventions of ch. 133: Wis. Stat. § 133.14 (illegal contracts are void); Wis. Stat. § 133.16 (injunctive relief, temporary and permanent, and attorney fees may be accorded); and Wis. Stat. § 133.18 (damages and attorney fees are available).

¶ 71. The enforcement of a claim for relief due to an alleged restraint of trade by contract has been specifically provided for by the legislature in Wis. Stat. § 133.03(1). Not only is such a claim proscribed, but the legislature has specified various types of relief that a court can award. *See e.g.,* Wis. Stat. § 133.14 (illegal contracts are void); Wis. Stat. § 133.16 (injunctive relief, temporary and permanent, and attorney fees may be accorded); and Wis. Stat. § 133.18 (damages and attorney fees are available). Accordingly, I conclude that E-Z's § 133.03(1) claim is part of a specific statutory scheme and therefore, it satisfies the first part of the requisite test for an exception to the directives of Wis. Stat. § 893.80(1).[6]

---

[6] In concluding that ch. 133 contains a specific statutory scheme, the court of appeals relied on *Gillen v. City of Neenah,* 219 Wis. 2d 806, 580 N.W.2d 628 (1998). *E-Z Roll Off, LLC v. Cnty. of Oneida,* 2010 WI App 76, ¶ 18, 325 Wis. 2d 423, 785 N.W.2d 645. The majority opinion concludes that the reasoning of *Gillen* is "instructive," yet "inapplicable to the present case." Majority op., ¶ 28. In so concluding, the majority states that "[i]n contrast to the plaintiffs in *Gillen,* E-Z does not seek immediate injunctive relief under Wis. Stat. § 133.16. Rather, E-Z seeks declaratory relief and damages under Wis. Stat. § 133.18." *Id.* However, the distinction between the remedy sought by the plaintiffs in *Gillen* and the remedy E-Z sought in

### b. Preference for prompt resolution

¶ 72. The next step is to assess whether enforcement of Wis. Stat. § 893.80(1) would contravene a legislative preference for prompt resolution of ch. 133 claims. Wisconsin Stat. § 133.18 assists me in this assessment. Section 133.18(5) requires that "[e]ach civil action under this chapter and each motion or other proceeding in such action shall be expedited in every way and shall be heard at the earliest practicable date." However, Oneida County has 120 days after the filing of a notice of claim under § 893.80(1) to respond to a contention that it has entered into an illegal contract in restraint of trade. This time lag is in conflict with "expedited" procedures that the legislature has chosen for ch. 133 claims.

¶ 73. Furthermore, Wis. Stat. § 133.16 provides for both temporary and permanent injunctive relief. It directs, "pending the filing of the answer . . . [a court] may, at any time, upon proper notice, make such temporary restraining order or prohibition as is just." We have noted that a statutory scheme that provides for immediate

its complaint is not relevant to the determination of whether ch. 133 comprises a specific statutory scheme. Surely, a specific statutory scheme can include more than one section of a chapter. Here, the entirety of ch. 133 addresses anticompetitive conduct. The scheme is quite specific and quite comprehensive. Stated otherwise, the statutory scheme includes several statutory sections.

Furthermore, by considering only a single statutory section, specifically Wis. Stat. § 133.18, rather than the entire statutory scheme set out in ch. 133 that proscribes anticompetitive conduct, the majority's focus is too narrow. For example, a Wis. Stat. § 133.03(1) claimant could seek both damages under § 133.18 and a temporary and/or permanent injunction under Wis. Stat. § 133.16. Under the majority's reasoning, would that ch. 133 claim be an exception to the notice of claim provisions of Wis. Stat. § 893.80(1) given our decision in *Gillen?*

injunctive relief is inconsistent with Wis. Stat. § 893.80(1)'s requirements. *Gillen,* 219 Wis. 2d at 822. A party bringing a claim pursuant to Wis. Stat. § 133.03(1) has a statutory right to seek temporary and permanent injunctive relief. Requiring a party to wait 120 days before being able to use the statutory remedies that the legislature set out would be contrary to the legislature's stated purpose that ch. 133 "be interpreted in a manner which gives the most liberal construction to achieve the aim of competition." Wis. Stat. § 133.01. Accordingly, I conclude that E-Z has satisfied the second part of the requisite test for an exception to the directives of § 893.80(1).

c. Purposes underlying Wis. Stat. § 893.80(1)

¶ 74. The third part of the test for assessing a claimed exception to the directives of Wis. Stat. § 893.80(1) is whether the purposes underlying § 893.80(1) would be furthered by requiring that a notice of claim be filed. The purposes underlying § 893.80(1) are to permit timely investigation of claims so that the facts are not stale and to facilitate settlement of those that are meritorious. *Thorp v. Town of Lebanon,* 2000 WI 60, ¶¶ 23, 28, 235 Wis. 2d 610, 612 N.W.2d 59. However, as a party to the contract that E-Z alleges is in restraint of trade, little investigation would be needed by Oneida County, and settlement appears unlikely.

¶ 75. In addition, in this step, it is worth noting that Wis. Stat. § 133.18(4) provides, "A cause of action arising under this chapter does not accrue until the discovery, by the aggrieved person, of the facts constituting the cause of action." The circuit court concluded that the "event" that gives rise to the obligation to give notice within 120 days is the June 2003 signing of the contract between Waste Management and Oneida

County.[7] However, E-Z did not learn of the $5.25 tipping fee that Waste Management was awarded as part of that contract until February 2004. Therefore, by the time E-Z had knowledge of the facts giving rise to its ch. 133 claim, 120 days had long since passed, if the circuit court is correct about the event leading to the notice of claim requirement. Stated otherwise, Oneida County could not timely investigate a claim E-Z did not know it had. That is what is alleged to have happened here.[8]

¶ 76. Furthermore, if Wis. Stat. § 893.80(1) were applied to E-Z's claim, it never could have employed the statutes that the legislature enacted to promote competition and to restrict restraints of trade. A defendant could simply say that the complaining party learned of the violation too late and as a result, the defendant is not required to do anything about it. Surely, that is not what the legislature sought to achieve either under § 893.80(1) or ch. 133.

¶ 77. Therefore, I conclude that E-Z has satisfied the third part of the requisite test for an exception to the directives of Wis. Stat. § 893.80(1). Accordingly, I

---

[7] The majority concludes that it does not need to determine what "event" gave rise to the obligation to give notice, and consequently when the cause of action began to accrue. The majority so concludes because even if it accepted E-Z's argument that the cause of action did not accrue until it learned of the agreement in February, 2004, more than 120 days passed between when the cause accrued and E-Z's filing of the notice of claim in September 2005. Majority op., ¶ 43.

[8] Although Oneida County implies that this may not be an accurate statement of fact, on a motion for summary judgment the facts are construed to favor the non-moving party. *DeHart v. Wis. Mut. Ins. Co.*, 2007 WI 91, ¶ 7, 302 Wis. 2d 564, 734 N.W.2d 394.

conclude that E-Z's Wis. Stat. § 133.03(1) claim is excepted from § 893.80(1)'s notice requirements.

## III. CONCLUSION

¶ 78. I conclude that E-Z makes a restraint of trade claim under ch. 133 of the Wisconsin Statutes that meets the three-part test for an exception to the requirements of Wis. Stat. § 893.80(1): (1) ch. 133 provides a specific statutory scheme for the identification and resolution of claims; (2) compliance with § 893.80(1) would hinder the legislature's preference for prompt action on ch. 133 claims; and (3) the purposes for which § 893.80(1) was enacted would not be furthered by requiring a notice of claim to be filed for ch. 133 claims. Accordingly, I would affirm the court of appeals and I respectfully dissent from the majority opinion.

¶ 79. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.